THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAMONA LOPEZ, RAMONA LOPEZ as
Mother, Next Friend and Administrator of
MARTIN VEGA a/k/a ANGEL GARCIA,
deceased,

              Plaintiffs,

        v.

**WARDEN OF STATEVILLE
CORRECTIONAL CENTER MICHAEL
LEMKE**, in his official capacity,
**MAJOR AT STATEVILLE CORRECTIONAL
CENTER K. LASKEY**, individually and as an
agent of the IL DEPT. OF CORRECTIONS,
**LIEUTENANT AT STATEVILLE
CORRECTIONAL CENTER C. SHAW**,
individually and as an agent of the IL DEPT.
OF CORRECTIONS,
**ACTING SERGEANT AT STATEVILLE
CORRECTIONAL CENTER C.
WELLINGTON**, individually and as an agent
of the IL DEPT. OF CORRECTIONS,
**E. MELBY ILLINOIS STATE
CORRECTIONAL OFFICER**, individually
and as an agent of the IL DEPT. OF
CORRECTIONS,
**J. STEPHENS ILLINOIS STATE
CORRECTIONAL OFFICER**, individually
and as an agent of the IL DEPT. OF
CORRECTIONS,
**J. BROOKS ILLINOIS STATE
CORRECTIONAL OFFICER**, individually
and as an agent of the IL DEPT. OF
CORRECTIONS,
**D. GRIFFIN ILLINOIS STATE
CORRECTIONAL OFFICER,** individually
and as an agent of the IL DEPT. OF
CORRECTIONS,
**JOHN DOE EMPLOYEES**, individually and
as agents of WEXFORD HEALTH SOURCES,
INC., **WEXFORD HEALTH SOURCES, INC.**,
a foreign corporation doing business in
Illinois, and the **ILLINOIS DEPARTMENT
OF CORRECTIONS**.

              Defendants.

Case No. 1:14-CV-09996
Judge
Magistrate Judge

JURY TRIAL DEMANDED

## COMPLAINT

RAMONA LOPEZ, and RAMONA LOPEZ as Mother, Next Friend and Administrator of MARTIN VEGA a/k/a ANGEL GARCIA, deceased, through her undersigned counsel, complaining against Defendants, **WARDEN OF STATEVILLE CORRECTIONAL CENTER MICHAEL LEMKE**, in his official capacity, **MAJOR AT STATEVILLE CORRECTIONAL CENTER K. LASKEY**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **LIEUTENANT AT STATEVILLE CORRECTIONAL CENTER C. SHAW**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **ACTING SERGEANT AT STATEVILLE CORRECTIONAL CENTER C. WELLINGTON**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **E. MELBY ILLINOIS STATE CORRECTIONAL OFFICER**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **J. STEPHENS ILLINOIS STATE CORRECTIONAL OFFICER**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **J. BROOKS ILLINOIS STATE CORRECTIONAL OFFICER**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **D. GRIFFIN ILLINOIS STATE CORRECTIONAL OFFICER**, individually and as an agent of the IL DEPT. OF CORRECTIONS, **JOHN DOE EMPLOYEES**, individually and as agents of WEXFORD HEALTH SOURCES, INC., **WEXFORD HEALTH SOURCES, INC.**, a foreign corporation doing business in Illinois, and the **ILLINOIS DEPARTMENT OF CORRECTIONS** state as follow:

### Introduction

1.      Plaintiffs bring this action against Defendants seeking redress for the violation of rights secured by the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983 for Failure to Provide Adequate Medical Care (Count I), for violations of Illinois law for Wrongful Death (Count II), Survival Action (Count III), for violations of Illinois law for Intentional Infliction of Emotional Distress (Count IV), for Negligence (Count V), Respondeat Superior (Count VI), and Indemnification (Count VII).

### Jurisdiction and Venue

2.      This Court has jurisdiction over this matter under the following:

   a.   28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

   b.   S8 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

c. 28 U.S.C. § 1343 , as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the united States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

3.      Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. §1983.

4.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business in this judicial district and the events or omissions giving rise to claims occurred in this judicial district.

<u>Parties</u>

6.      Plaintiff, RAMONA LOPEZ, is a resident of the United States, who currently resides in Ilinois.  She sues on behalf of MARTIN VEGA a/k/a ANGEL GARCIA, deceased, as his Mother, Next Friend and as pending Administrator of MARTIN VEGA a/k/a ANGEL GARCIA.  The mother seeks loss of care, comfort, society and companionship of her son as a result of Defendants' conduct.

7.      A petition for probate for the decedent's estate was filed on 12/02/14 under case no. 14 P 7282 in Illinois state court.  The naming of an administrator is still pending.

8.      Defendant MICHAEL LEMKE ("Warden Lemke") was at all times relevant in charge of the Stateville Correctional Center.  At all relevant times, Defendant Warden Lemke served in the position of Warden of Stateville Correctional Center in Will County, and the State of Illinois. Defendant Warden Lemke is sued in his official capacity.

9.      Defendant ILLINOIS DEPARTMENT OF CORRECTIONS is a municipal agency at the State of Illinois and is situated in the State of Illinois.  The STATE OF ILLINOIS administers itself through departments, one of which is the Stateville Correctional Facility ("Stateville").  Stateville runs the health service for detainees at Stateville Correctional Facility under the name "Wexford Health Sources."  The Defendant WEXFORD HEALTH SOURCES, INC. is a corporation registered to do business in the State of Illinois which provides healthcare services to inmates housed in an Illinois Department of Corrections facility.

10.     Defendants Illinois Department of Corrections and Wexford Health Sources, Inc. are  liable for any judgments related to its agents and employees arising in the course of their employment, pursuant to 745 ILCS 10/2-302.

11.     MAJOR K. LASKEY, LIEUTENANT C. SHAW, ACTING SERGEANT C. WELLINGTON, CORRECTIONAL OFFICER E. MELBY, CORRECTIONAL OFFICER J. STEPHENS, CORRECTIONAL OFFICER  J. BROOKS and CORRECTIONAL OFFICER  D. GRIFFIN were present during the events complained of, Correctional Officers, Acting Sergeant, Lieutenant, and Major, were present during the events complained of and contributed to the death of Vega through their actions or omissions.  They are all sued in their individual capacities and as agents of the ILLINOIS DEPT. OF CORRECTIONS.

12.     JOHN DOE employees were employees of WEXFORD HEALTH SOURCES, INC., a corporation doing business in Illinois during the events complained of and contributed to the death of Vega through their actions and omissions.  JOHN DOE employees are sued

individually and as agents and employees of Defendant WEXFORD HEALTH SOURCES, INC. Plaintiff will as leave of the Court to amend this Complaint to insert these Defendants' true names and capacities when same have been ascertained and will further ask leave to join said Defendants in these proceedings.

13.     WEXFORD HEALTH SOURCES, INC. was acting as an official government agency and under color of state law.

14.     At all times relevant hereto, the Defendants were acting under color of state law.

<u>Facts Upon Which Claims Are Based</u>

15.     Vega, a 31 year-old father of two, was convicted of homicide.

16.     Vega was incarcerated at the Stateville Correctional Facility.

17.     Vega suffered from depression and had been under psychiatric care and was receiving prescribed medication while a pre-trial detainee at the Cook County Jail.

18.     Post-conviction, Vega was transferred to Stateville Correctional Facility where he failed to receive medication and psychiatric care.

19.     At the Stateville Correctional Facility, Vega attempted suicide and continued to have suicidal ideations.

20.     Defendants did not provide Vega with the necessary medication and medical treatment to treat his mental health issues despite his requests and despite the fact that they knew or should have known of his need for such treatment and despite the known and obvious risks that denial of such treatment would lead to serious risk of harm.

21.     Defendants did not provide Vega with suicide precautionary measures.

22.     Vega was placed in the general population with a cellmate.

23.     On December 12, 2013, Vega visited with his girlfriend.

24.     Upon return from the visit with his girlfriend, he ran to the fifth floor of the facility and threw himself over the rail at approximately 12:25 p.m..

25.     Defendants failed to take precautionary measures when Vega and other inmates were returning to their cells post-visit.

26.     Vega remained on the floor for several hours.

27.     Vega was pronounced dead by doctors at Presence St. Joseph Medical Center in Joliet, Illinois on December 12, 2013 at 3:19 p.m.

28.     On December 12, 2013, Patrick O'Neil, a Medical Examiner, performed an autopsy and ruled the cause of death as suicide.

29.     Vega's mental condition was such that anyone observing him knew or should have know that he needed urgent psychological attention.

30.     Defendants also failed to take suicide precautions based on Vega's prior action.

31.     Defendants failed to provide Vega with adequate medical care and as a result he died on January 12, 2013 in the Stateville Correctional Center as a detainee.

32.     The failure of Defendants to provide Vega with access to medical care constituted complete, deliberate, willful and wanton, and criminal indifference to Vega's serious medical needs.  Defendants ignored the obvious and serious medical needs of Vega, which resulted in his death.

33.     As a direct and proximate result of Defendants' willful and wanton indifference to Vega's serious medical needs, Vega suffered great pain, mental anguish, and death.

34.     Defendants were deliberately indifferent to the suicide problem at Stateville Correctional Facility and failed to institute suicide prevention practices pursuant to Constitutionally required standards, including a failure to provide; (1) appropriate suicide prevention policy or procedure; (2) suicide prevention education and training for its staff

members; (3) appropriate screening to assess detainee's suicide risk; (4) appropriate intervention addressing procedures of how to handle a suicide in progress; (5) appropriate notification, reporting, and review when suicides occur; and (6) appropriate tools to the correctional staff for quick response in the event of a suicide attempt.

35.     Defendant WEXFORD HEALTH SOURCES, INC. was under contract to the State of Illinois, through the Department of Corrections, to provide health care to inmates in Illinois prisons such as Stateville Correctional Center, including Plaintiff.

36.     Defendant WEXFORD HEALTH SOURCES, INC. maintained a policy or procedure under which inmates with suicidal ideations and/or serious mental health issues, such as Plaintiff, were routinely denied access to proper or sufficient medication and/or medical care.

37.     Defendants maintained and continue to maintan a policy that sanctioned the maintenance of prison conditions that infringe upon the constitutional rights of prisoners.

38.     Defendants failed to sufficiently supervise detainee Vega and other detainees to prevent suicide.

39.     Defendants were on notice since Vega's pre-trial detention that there was a substantial risk that the failure to provide medical treatment for mental health issues could result in suicide.

40.     Defendants fell below the constitutionally required standards of care.

41.     Defendants were deficient in providing care to detainees as it relates to suicide prevention programs, medical staffing, inadequate intake screening, inadequate health assessments, inadequate acute care, inadequate emergency care, inadequate record keeping, inadequate staffing, and inadequate access to medical care.

### COUNT I: FAILURE TO PROVIDE ADEQUATE MEDICAL CARE
**42 U.S.C. § 1983, Fourteenth Amendment)**

42.     Plaintiff restates and realleges by reference paragraphs 1 through 41 as if fully set forth herein as against all Defendants.

43.     Vega had a serious medical need as he was suffering from depression and suicidal ideations when he was detained at Stateville Correctional Facility.

44.     Defendants and the officers, employees, and supervisors of Defendants were deliberately indifferent to Vega's serious medical need by not providing him with medical attention and/or medication while he was being detained in the Stateville Correctional Facility.

45.     The actions of the Defendants, described above, whereby Defendants were aware of but deliberately, willfully, and wantonly ignored the obvious serious medical needs of Vega and the substantial risk of serious injury and death, and failed to take appropriate steps to protect him, constituted deliberate indifference to Vega's serious medical needs, thus violating the Fourteenth Amendment to the United States Constitution.

46.     Defendants and the officers, employees, and supervisors of Defendants were deliberately indifferent to Vega's medical care.

47.     Defendants' and the officers,' supervisors,' and employees' conduct contributed to Vega's suicide.

48.     The Constitutional violations detailed above were caused by the customs, policies, and practices of the institutional Defendants, as promulgated, enforced, and disseminated by the official Defendants, whereby the institutions and official Defendants charged with ensuring adequate medical care and supervision to pre-trial detainees at Stateville Correctional Facility failed utterly to provide access to the most basic health care commensurate with a civilized society, in this case and many other cases.

49.     These failures include:

(a)    fostering an atmosphere at the Stateville Correctional Facility where correctional and medical personnel were encouraged to disregard serious medical needs of detainees; and

(b)    knowingly failing to ensure that serious emergent medical needs of detainees could be treated in a reasonable time frame, by (1) failing to provide any medical services in the night hours, (2) failing to have an adequate plan to respond to emergency medical needs, (3) failing to have a reasonably equipped or staffed emergency medical response team, (4) failing to have a system in place so that medical requests of detainees are reviewed promptly by properly trained medical staff and acted upon in a reasonable manner, (5) severely understaffing correctional officers at Stateville Correctional Facility, in violation of accepted practices and court orders, despite knowing that such understaffing greatly increases the chances that detainees' serious medical needs go untreated, and/or (6) failing to correct serious safety problems such as broken video monitoring systems, despite knowing that such problems greatly increase the chances that detainees' serious medical needs go untreated; and

(c)    failing to have an adequate assessment of incoming detainee's health situation by qualified physicians;

(d)    having inadequate medical staffing; and / or

(e)    encouraging the destruction of documents and false writing of reports to cover up inadequacies in the medical care of detainees, thus maintaining an atmosphere and climate where detainees' serious medical needs are ignored and Constitutional violations are not prosecuted or punished.

50.    The conduct of Defendants was and became the custom and practice of the Illinois Department of Corrections.

51.    By Defendants' actions, Vega suffered compensable injury and harm as a result of the denial of rights guaranteed to him pursuant to the United States Constitution and by the denial of medical care.

52.    As a direct and proximate result of these Constitutional violations, Vega was caused to suffer great pain, mental anguish, and death.

**WHEREFORE,** Plaintiff seeks the following relief as to Count I of the Complaint against Defendants jointly and severally:

A.     compensatory damages in an amount to be determined at trial;

B.     loss of care, comfort, society and companionship for Vega's purported heirs;

C.     punitive damages as allowed by law as against the individual Defendants only;

D.     an award of reasonable attorneys' fees, costs, and litigation expenses; and

E.     for any further relief that this Court deems just and equitable.

## COUNT II: WRONGFUL DEATH
### (Under Illinois Law)

53.    Plaintiff restates and re-alleges by reference paragraphs 1 through 41 as if fully set forth herein as against all Defendants.

54.    The individual Defendants and the institutional Defendants, acting by and through their duly authorized agents and/or employees, owed Vega the duty to refrain from willful and wanton acts or omissions which could cause suffering or death to the decedent.

55.    As detailed above, the defendants breached this duty by willfully and wantonly committing one, more, or all of the following acts or omissions:

(a)    deliberately ignoring the serious medical needs of the decedent;

(b)    failing to have mental health staff to supervise detainees;

(c)    having insufficient detainee supervision;

(d)    keeping detainees on extended lockdown periods which interferes with medical and/or mental health care;

(e)    failing to have appropriately trained staff in suicide prevention;

(f)    failing to have annual, specialized training;

(g)    failing to have adequate staffing;

(h)    failing to maintain their posts;

(i)    having a constitutionally impermissible policy of cross-watching tiers;

(j)    failing to timely respond to calls for assistance from the detainees;

(k)     failing to provide timely access to medical treatment for a serious condition of which they were aware; and/or

(l)     otherwise acting willfully and wantonly toward decedent, in total and criminal disregard to his medical needs.

56.     As a direct and proximate result of one or more of the foregoing willful and wanton acts and/or omissions of the individual defendants, the decedent was caused to die on December 12, 2013.

57.     The institutional Defendants are sued in this count pursuant to the doctrine of respondeat superior, in that the individual defendants performed the actions complained of while on duty and in the employ of defendant institutions, and while acting within the scope of this employment.

58.     Vega left surviving his two minor children.

59.     By reason of the death of Vega, Vega's heirs have suffered pecuniary damages and been deprived of the support, comfort, protection, and society of Vega.

**WHEREFORE,** Plaintiff seeks the following relief as to Count II of the Complaint against all Defendants jointly and severally:

A.     compensatory damages in an amount to be determined at trial;

B.     loss of care, comfort, society and companionship for Vega's heirs;

C.     punitive damages as allowed by law as against the individual Defendants only;

D.     an award of reasonable attorneys' fees, costs, and litigation expenses; and

E.     for any further relief that this Court deems just and equitable.

## COUNT III:  SURVIVAL ACTION
### (Under Illinois Law)

60.     Plaintiff restates and realleges by reference paragraphs 1 through 41 as if fully set forth herein as against all Defendants.

61.     Vega was not properly assessed to identify that he was suffering from mental health issues and suicidal ideations.

62.     While Vega was suffering from mental health issues and suicidal ideations, he attempted suicide and/or exhibited mental anguish and he was trying to get medical attention.

63.     He suffered great pain and agony prior to his death, proximately caused by the above-stated acts and/or omissions of Defendants.

**WHEREFORE,** Plaintiff seeks the following relief as to Count III of the Complaint, jointly and severally against Defendants:

A.     compensatory damages in an amount to be determined at trial;

B.     loss of care, comfort, society and companionship for Vega's heirs;

C.     punitive damages as allowed by law as against the individual Defendants only;

D.     an award of reasonable attorneys' fees, costs, and litigation expenses; and

E.     for any further relief that this Court deems just and equitable.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Under Illinois Law)

64.     Plaintiff restates and re-alleges by reference paragraphs 1 through 41 as if fully set forth herein as against all Defendants.

65.     Defendants' conduct as referenced above was extreme and outrageous.

66.     Defendants performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

67.     Defendants knew or should have known that their lack of care for Vega would cause him severe emotional distress.

68.     As a direct and proximate result of this conduct, Vega did in fact suffer severe emotional distress, resulting in injury to his mind, body, and nervous system, including mental anguish, excruciating physical pain, emotional suffering, and death.

WHEREFORE, Plaintiff seeks the following relief as to Count IV of the Complaint, jointly and severally against Defendants:

A.     compensatory damages in an amount to be determined at trial;

B.     loss of care, comfort, society and companionship for Vega's heirs;

C.     punitive damages as allowed by law as against the individual Defendants only;

D.     an award of reasonable attorneys' fees, costs, and litigation expenses; and

E.     for any further relief that this Court deems just and equitable.

### COUNT V: NEGLIGENCE
### (Under Illinois Law)

69.     Plaintiff restates and re-alleges by reference paragraphs 1 through 41 as if fully set forth herein as against all Defendants.

70.     Defendants had a duty to exercise care for Vega and provide adequate staffing, physical and mental health screening, suicide prevention programs, proper medical treatment, and prompt emergency response with the necessary life saving implements.

71.     Defendants failed to conform to the required standard of care.

72.     Defendants' failure to meet that standard of care proximately caused Vega's injury.

73.     Defendant's failure to meet that standard of care proximately caused Vega's death.

74.     The failure of Defendants to provide adequate staffing, physical and mental health screening, suicide prevention programs, proper medical treatment, and prompt

emergency response with the necessary life saving implements for Vega constituted complete, deliberate, willful and wanton, and criminal indifference to Vega's serious medical needs.

**WHEREFORE,** Plaintiff seeks the following relief as to Count V of the Complaint against all Defendants jointly and severally:

A.      compensatory damages in an amount to be determined at trial;

B.      loss of care, comfort, society and companionship for Vega's heirs;

C.      punitive damages as allowed by law as against the individual Defendants only;

D.      an award of reasonable attorneys' fees, costs, and litigation expenses; and

E.      for any further relief that this Court deems just and equitable.

### COUNT VI: RESPONDEAT SUPERIOR
**(v. Illinois Department of Corrections & Wexford Health Sources, Inc.)**

75.      As against the Illinois Department of Corrections and Wexford Health Sources, Inc., Plaintiff restates and re-alleges by reference paragraphs 1 through 41 above as though fully set forth herein.

76.      In committing the acts alleged herein, *supra*, the individual Defendants were employees of the Illinois Department of Corrections, acting at all relevant times within the scope of their employment.

77.      The Illinois Department of Corrections and Wexford Health Sources, Inc. are liable under *respondeat superior* for the acts and omissions of its employees.

78.      745 ILCS § 10/2-302, and 745 ILCS § 10/9-102 require the Illinois Department of Corrections and Wexford Health Sources, Inc. to pay for a judgment entered against the Warden in his official capacity.

79.      The individual Defendants' conduct described herein, *supra*, was willful and wanton. Illinois Department of Corrections and Wexford Health Sources, Inc. are liable as principals for all torts committed by its agents.

Page 14 of 16

**WHEREFORE,** Plaintiff respectfully requests:

A.    compensatory damages;

B.    an award of reasonable attorneys' fees, costs, and litigation expenses; and

C.    for any further relief that this Court deems just and equitable.

**COUNT VII: INDEMNIFICATION**
**(v. Illinois Department of Corrections and Wexford Health Sources, Inc.)**

80.    As against Defendants Illinois Department of Corrections and Wexford Health Sources, Inc., Plaintiff restates and re-alleges by reference paragraphs 1 through 41 above as though fully set forth herein.

81.    Illinois law (745 ILCS § 10/2-302, and 745 ILCS § 10/9-102) provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

82.    Defendants were employees of the Illinois Department of Corrections and acted within the scope of their employment in the actions alleged herein, *supra*.

83.    The individual Defendants' conduct described herein, *supra*, was willful and wanton.

84.    In the event the individual Defendants are found liable for their actions performed in the course of their employment with the Illinois Department of Corrections and Wexford Health Sources, Inc. must indemnify the individual defendants for this verdict pursuant to 745 ILCS § 10/2-302 and 745 ILCS § 10/9-102.

**WHEREFORE**, Plaintiffs respectfully request:

A.   that the Illinois Department of Corrections and Wexford Health Sources, Inc. pay any compensatory judgments and Plaintiffs' damages as alleged herein against the individual Defendants who acted in the course of their employment; and

B.   for any further relief that this Court deems just and equitable.

Respectfully Submitted,

RAMONA LOPEZ, and RAMONA LOPEZ as Mother, Next Friend and pending Administrator of MARTIN VEGA a/k/a ANGEL GARCIA, deceased,

*s/Bridget Ann Clark-Castrejón*

Attorney for Plaintiffs

*Electronically filed on April 6, 2015*

Bridget A. Clark-Castrejón, Esq. (6285935)
**CLARK CASTREJÓN LAW FIRM**
161 N. Clark St., Suite 4700
Chicago, IL 60601
Phone:  312.217.2665
E-mail:

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the attached documents were served on the designated attorneys by electronic service via the Court's ECF System on April 6, 2015.

*s/Bridget Ann Clark-Castrejón*

*Electronically filed April 6, 2015*